UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER J. MILLER,

        Petitioner,

    v.

JOEL MARTINEZ,

        Respondent.

Case No. 16-cv-06806-JD

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

Christopher Miller, a pro se state prisoner, has brought a habeas petition pursuant to 28 U.S.C. § 2254. The Court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it and Miller filed a traverse. The petition is denied.

## BACKGROUND

A jury found Miller guilty of molesting a child under the age of fourteen, possession of child pornography and failure to register as a sex offender. *People v. Miller*, No. A139503, 2015 WL 5560192, at *1 (Cal. Ct. App. Sept. 21, 2015). It was found true that Miller had two prior prison term enhancements, and he was sentenced to sixty-nine years and four months in prison. Clerk's Transcript ("CT") at 695-97. On September 21, 2015, the California Court of Appeal affirmed the judgment in a reasoned opinion. *Miller*, 2015 WL 5560192 at *1. The California Supreme Court denied review on December 9, 2015. Answer, Ex. 10. Miller filed a habeas petition in Contra Costa County Superior Court that was denied in a reasoned opinion on June 26, 2016. Ex. 11 at 432-35.[1] Habeas petitions to the California Court of Appeal and the California

---

[1] In citing to the superior court opinion the Court identifies to the page numbers on the Court's electronic docket.

United States District Court
Northern District of California

Supreme Court were summarily denied. *Id.*, Exs. 11-12.

The California Court of Appeal summarized the facts of the crime as follows:

> Defendant was charged by amended information with 29 counts of lewd and lascivious conduct with Doe 1, a child under the age of 14 (Pen.Code, § 288, subd. (a)); (counts 1 though 29), possession of pornography with a prior conviction (§ 311.11, subd. (b); count 30), failure to register as a sex offender upon release from incarceration (§ 290.015, subd. (a); count 31), failure to register as a sex offender at each residence (§ 290.010; count 32), failure to complete annual sex offender registration (§ 290.012, subd. (a); count 33), and failure to register as a sex offender within five days of change of address (§ 290, subd. (b); count 34). The information alleged in connection with counts 1 through 29 that defendant had substantial sexual contact with the minor (§ 1203.066, subd. (a)). The information also alleged defendant served two separate prior prison terms (§ 667.5, subd. (b)).

> The following evidence was presented at trial:

> Defendant admitted that he was a pedophile and that he had been sexually and romantically attracted to young boys all his life. He was first convicted of possession of child pornography in 1997 and, as a result, was required to register as a sexual offender. Defendant went to prison in 2007 after being convicted of additional child pornography charges. Defendant did not register within five days of his release from prison in December 2008, despite being notified of his obligation to do so.

> In early 2009, Vickie lived with her two sons Doe 1, age 12, and Doe 2, age eight. The boys were friends with nine–year–old Doe 3 who lived in the neighborhood. In February 2009, defendant moved into an apartment with Doe 3 and Doe 3's father. Vickie and defendant became friends through the children and in late May or early June 2009, defendant moved into Vickie's apartment with her two sons.

> Defendant had his own bedroom and Doe 1 and Doe 2 shared a separate bedroom. Soon after defendant moved in, Doe 1 started to spend the nights in defendant's bedroom. At first he slept on the couch in defendant's bedroom, but he later moved to the top bunk. Eventually, he moved down to the bottom bunk, and he and defendant slept in the same bed.

> On December 1, 2009, defendant was arrested for failing to register as a sex offender.

> The next day, on December 2, Doe 1 gave a statement to a forensic interviewer. A recording of Doe 1's statement was played for the jury. Doe 1 told the interviewer that when he spent the night at Doe 3's apartment, defendant would sleep in the same bed with Doe 1, and defendant asked him to take off his clothes. Defendant would "give [Doe 1] oral sex." Defendant asked Doe 1 to kiss him on his face. Defendant touched the youth all over his body. He told Doe 1

not to talk to anybody about what they were doing.  When defendant moved into Doe 1's apartment, Doe 1 began to sleep in defendant's bed.  The same sexual activity continued two or three times a week, including oral sex.

At trial, Doe 1 confirmed that he and defendant began sleeping in the same bed when defendant was living at Doe 3's apartment. From the first night, defendant began touching the boy's genitals under his clothing.  At first, defendant remained clothed, but he soon started to sleep naked.  Defendant put his mouth on Doe 1's genitals. Doe 1 testified, "After the first time it just became like that every night."  Once or twice, defendant warned Doe 1 not to tell his mother about what was happening.

When defendant moved into Doe 1's residence, Doe 1 began to spend the night in defendant's room.  Initially it was a rare occasion, but it "became a habit to where I would just sleep there every night without question."  Doe 1 explained that he "usually" slept in his clothing "until it came to the touching and stuff."  Defendant touched Doe 1's body "hand to genital [and] mouth to genital."  The same type of sexual activity occurred three to four times a week.  On one occasion, defendant put his finger inside Doe 1's anus and moved it in and out.  Doe 1 explained that he would ask defendant to rub his feet, and defendant "would start massaging my feet and then work his way up my legs to my genitals."

Defendant "would constantly" say that he loved Doe 1, and Doe 1 believed him.  Although Doe 1 thought the relationship was strange at first, it "kind of became normal" to hear that defendant loved him. Doe 1 was upset when defendant was arrested.  He explained, "[A]t the time I didn't have a strong relationship with my mom, so I thought the only person who actually cared had left."

On cross-examination, Doe 1 was questioned about a letter he wrote following defendant's arrest in which he said that defendant never hurt or molested him.  He explained that his mother asked him to write the letter saying that defendant had not molested him because "it was by my own will."  At the time he wrote the letter, he misunderstood what "molestation" meant.  Later, he explained that at the time he wrote the letter he thought that molestation was touching someone without their approval, "So because I approved or let him, I thought that it wasn't molestation."  He meant that defendant did not do anything forcibly.

Defendant claimed that he never touched Doe 1 in a sexual manner. He acknowledged that he allowed Doe 1 to sleep next to him in his bed, but under a separate blanket.  He denied touching Doe 1 during the night with his hands but admitted their bodies bumped up against each other.  When asked if he "received lustful gratification" from sleeping next to Doe 1, defendant responded, "I received a warm, wonderful, pleasurable feeling sleeping next to a boy that I was attracted to.  [¶]  Lustful gratification to me means having a orgasm or doing sexual activity.  I hate to split hairs with this, but it was pleasurable to sleep next to him."  Defendant admitted that there was "definitely a romantic gratification" which contained "an element of lustful gratification as well."  Defendant also

acknowledged that Doe 1 would sleep naked, "[I]t was not entirely uncommon for him [Doe 1] to take his boxer shorts off. . . . [H]e would pull off his boxer shorts and giggle and throw them across the room and sleep naked. And I didn't ask him to do it, but, again, I didn't stop him. . . . [¶] . . . I definitely found it sexually pleasurable that he was next to me naked."

Following defendant's arrest in December 2009, law enforcement officers located a laptop computer in defendant's bedroom. On the computer, officers found evidence that defendant engaged in numerous online chat sessions while living with Doe 1. During the chats, defendant said that he lived with a 12–year–old "young friend" and that they had sex around five times per week. Defendant claimed that he often boasted over the Internet, but that his boasts were merely "inventions" which he made up because the imagery excited him.

Officers also found in defendant's computer pornographic videos and photos of an individual referred to as Doe 5. Doe 5's father testified that defendant met Doe 5 in March 2006 when Doe 5 was nearly 12 years old. Defendant's friendship with Doe 5 lasted only three months. The friendship ended when Doe 5's father did an Internet search and found that defendant had a criminal record. The video found on defendant's computer showed Doe 5 masturbating. Defendant claimed to have received the video from a third party, but admitted that he put Doe 5's name and age on the videos and distributed them to other pedophiles on the Internet. Defendant acknowledged that this was "a terrible thing" to do, but explained that he was very angry with Doe 5 at the time. He claimed that his anger stemmed from "bizarre" sexual abuse allegations that Doe 5 had made against him. Defendant admitted that he was attracted to Doe 5 and that he had slept in the same bed with him.

Finally, defendant was cross-examined about his relationship with Doe 4. Defendant acknowledged that when he was 21 years old and serving as a youth worker at a church, he formed a close relationship with 13–year–old Doe 4. He became close to Doe 4's mother and spent nights at their home. He kept a journal about his activities with the boy. Defendant explained, "There is no mention [in the journals] of literal sex. I was really kind of in denial at the time, but there's a lot of talking about loving being near him and touching him and massaging him and that kind of thing." Defendant denied having lustful feelings for Doe 4, but acknowledged he was "definitely feeling the swirl of really inten[se] emotions that [he] didn't know what to do with." Defendant acknowledged touching the boy, but claimed he did not get sexual pleasure from doing so.

The jury convicted defendant of all counts and found the substantial sexual contact allegations true. The court subsequently found true the two prior prison term enhancements. Defendant was sentenced to a prison term of 69 years four months, consisting of the eight-year upper term on count 1, 28 consecutive two–year terms on counts 2 through 29, a consecutive term of one year four months on count 30, consecutive eight–month terms on counts 31, 32, and 34, and two consecutive one-year terms for the prior prison term enhancements.

*Miller*, 2015 WL 5560192, at *1-3 (footnotes omitted).

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under Section 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). In conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the Court looks to the last reasoned opinion. *See Nunnemaker* at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). In this case the Court looks to the opinion of Contra Costa County Superior Court for the first claim and to the California Court of Appeal for the remaining claims in the petition.

As grounds for federal habeas relief, Miller contends that: (1) the trial court erred in excluding evidence, preventing him from presenting a defense, and trial counsel was ineffective for failing to more thoroughly challenge the ruling; (2) the prosecutor committed misconduct during cross-examination by suggesting Miller had committed prior offenses, and to the extent this claim is forfeited, trial counsel was ineffective; (3) trial counsel was ineffective by allowing the prosecutor to question Miller about past events after the trial court had already excluded evidence of the past events; (4) trial counsel was ineffective by allowing the prosecutor to misstate the law regarding Penal Code section 288; and (5) the trial court erred in issuing an excessive restitution fine in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

## EXCLUSION OF DEFENSE EVIDENCE

Miller argues that the trial court's decision denying his motion to cross-examine Doe 1 about watching pornography and engaging in prior sexual encounters with another individual violated his rights to due process and to present a defense. He also argues that trial counsel was ineffective for failing to file a motion for reconsideration after the original motion was denied.

### Legal Standard

A person in custody pursuant to the judgment of a state court can obtain a federal writ of habeas corpus only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A state court's evidentiary ruling therefore is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984);

*Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985).

The constitutional right to present a complete defense includes the right to present evidence, including the testimony of witnesses. *See Washington v. Texas*, 388 U.S. 14, 19 (1967). But the right is only implicated when the evidence the defendant seeks to admit is "relevant and material, and . . . vital to the defense." *Id*. at 16. Additionally, a violation of the right to present a defense does not occur any time such evidence is excluded, but rather only when its exclusion is "arbitrary or disproportionate to the purposes [the exclusionary rule applied is] designed to serve." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (internal citation and quotation marks omitted); *Michigan v. Lucas*, 500 U.S. 145, 151 (1991). This is true even if the rule under which it is excluded is "respected[,] . . . frequently applied," and otherwise constitutional. *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). If the "mechanical" application of such a rule would "defeat the ends of justice," then the rule must yield to those ends. *Id*. Still, "[o]nly rarely" has the Supreme Court held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence. *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (citing *Holmes*, 547 U.S. at 331) (rule did not rationally serve any discernable purpose); *Rock v. Arkansas*, 483 U.S. 44, 61 (1987) (rule arbitrary); *Chambers*, 410 U.S. at 302-03 (state did not even attempt to explain the reason for its rule).

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id*.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.

**Background**

The Contra Costa Superior Court described a portion of the background for his claim:

Petitioner's first claim that he was denied his right to present a certain defense, namely the alleged culpability of one Jonathan Enoch Young, and not petitioner, for sexual acts Young allegedly was involved in with John Doe I, is based on a complicated legal

and factual argument implicating his defense counsel's determination not to file a certain motion (Ex. A to Pet.). The motion raised questions concerning victim John Doe I's prior sexual contact with Young pursuant to Evidence Code 782. Apparently the motion was denied and counsel had drafted a Motion to Reconsider the [trial] court's prior ruling on the subject (Ex. A). That motion was never filed. Petitioner now contends his counsel did not pursue this "defense" and was ineffective for not doing so . . .

Petitioner's counsel filed a declaration in support of the 782 motion. Counsel wrote:

3. I have been informed and believe that John Doe I has been exposed to pornography by Mr. Young and spent time with Mr. Young and John Doe III during the time John Doe I stated he had been sexually molested by Mr. Miller [the defendant].

4. I have been informed and believe that John Doe III was sexually molested by Mr. Young and that Mr. Young is sexually attracted to boys John Doe I's age.

5. I have been informed and believe that John Doe I spent the night at the Young house three or four days prior to the CIC interview based on the testimony of Vickie Finley. The Young house was located in Concord and Mr. Miller did not live in the Young house.

6. The video titled "Long" was provided by the prosecution as part of Mr. Young's criminal file and show Mr. Young looking at the camera and film his own son and another child naked in the bath. The video shows Mr. Young's lewd and lascivious intent and acts toward both children.

Answer, Ex. 11 at 433-34.

The trial court denied Miller's motion to the extent he sought to question Doe 1 regarding the viewing of pornography and prior sexual activity. Reporter's Transcript ("RT") at 353. The trial court stated:

Under [evidence code] 782, you need to have more than simply a reliance by, for example, the sworn testimony of Vickie Finley, who simply testified that her children slept over at the Young house and that (John doe III) slept over at her house. There's nothing in this record that indicates any child pornography was shown to John Doe I at the Young house, that Mr. Young filmed John Doe, (Doe III), that he touch John Doe, (Doe III). There is nothing. And I cannot grant this motion on just this basis.

RT at 353. The trial court did rule that although the section 782 motion was denied, Miller would be allowed to show the jury the entire video filmed by Young where Doe 3 and another boy

8

appeared, as evidence that Miller did not film the video.  RT at 353-56.[2]

**Discussion**

The superior court denied this claim without prejudice.  The superior court specifically

stated:

> On this record the court cannot determine if counsel's decision not
> to religitate the EC 782 motion was ineffective.  However, applying
> the usual presumption, as noted above, the court is loath to second
> guess counsel's decision not pursue the EC 782 motion after it had
> already been denied.  The court would note, further, that the motion,
> as lodged with the petition, raised relevancy questions about John
> Doe III and Mr. Young that it cannot resolve (or even fully
> understand) on the record provided by petition.

Answer, Ex. 11 at 435.

It appears that the superior court denial provided Miller an opportunity to refile the case

with more information and supporting documents.  It is not clear if the petitions to the California

Court of Appeal and California Supreme Court for this claim contained the additional information

that was required.  Those higher courts denied the petitions without comment or citation.  It is

possible that the California Supreme Court denied the petition on the merits and, if so, then this

Court can review the claim.  It is also possible that the California Supreme Court's silent denial

means that the high court agreed with and adopted the reason of the lower court, i.e., that Miller's

claim could not be adjudicated because he failed to provide enough information.  *See*

*Nunnemaker*, 501 U.S. at 802-06.  If that was the case then this claim is unexhausted.  However, a

federal court may deny an unexhausted claim on the merits only when it is perfectly clear that the

petitioner does not raise even a colorable federal claim.  *Cassett v. Stewart*, 406 F.3d 614, 623-24

(9th Cir. 2005).  Miller's allegations do not raise even a colorable federal claim and is denied if it

was exhausted or unexhausted.

Under California law, defendants generally cannot question sexual assault victims about

their prior sexual history.  Cal. Evid. Code § 1103(c)(1).  A limited exception exists if the victims'

prior sexual history is relevant to their credibility.  Cal. Evid. Code § 1103(c)(5).  The defendant

must make an offer of proof of the relevance of the sexual conduct, and if the trial court finds that

---

[2] Miller's trial counsel had argued that if the jury was only shown a portion of the video they
would be left with the impression that Miller had molested Doe 3.  RT at 344-56.

the evidence is relevant to credibility, it balances its probative value against other considerations under Evidence Code Section 352. Cal. Evid. Code § 782; *People v. Daggett*, 225 Cal. App. 3d 751, 757 (1990).

Here, the trial court found that Miller failed to meet his burden in showing that Doe 1 had actually viewed pornography in Young's home or that Young had molested him. The trial court noted that Miller was speculating that because Doe 1 spent the night at Young's house, Doe 1 must have viewed pornography and been molested because Young was a convicted sex offender and had taken videos of Doe 3. The trial court also noted that Doe 1 had not accused Young of molesting him. To the extent Miller challenges the state evidentiary ruling under state law, he is not entitled to habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (explaining that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

Nor does Miller show that his right to present a defense was violated. The right to present a defense is only implicated when the evidence the defendant seeks to admit is "relevant and material, and . . . vital to the defense." *Washington*, 388 U.S. at 16. The evidence Miller sought to cross-examine Doe 1 with was mere speculation, and a due process violation occurs only where the excluded evidence has "persuasive assurances of trustworthiness" and was "critical" to the defense. *Chambers*, 410 U.S. at 302. Moreover, the Supreme Court has held that state rape-shield statutes represent a "valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy." *Lucas*, 500 U.S. at 149-50. Miller's mere speculation is insufficient to warrant habeas relief.

A violation of the right to present a defense merits habeas relief only if the error was likely to have had a substantial and injurious effect on the verdict. *See Lunbery v. Hornbeak*, 605 F.3d 754, 762 (9th Cir. 2010) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). In this case, even if there was an error, Miller cannot show that it had a substantial and injurious effect on the verdict. There was overwhelming evidence implicating Miller. Doe 1's pretrial statements and trial testimony described how Miller engaged in repeated and extensive sexual conduct with him. CT at 718-22; RT at 749-56. Doe 1's descriptions were corroborated by Miller's online depictions of his sexual activity. RT at 382-87, 549-54. There was also a partial DNA profile from a sample taken from Doe 1's penis that partially matched Miller. RT at 810-11, 945, 951-73. As noted above, Miller admitted he was a pedophile and that he routinely slept in the same bed as Doe 1, who was often naked, and that Miller found this to be sexually pleasurable. Any error in excluding certain cross-examination questions for the victim did not have a substantial and injurious effect on the verdict.

United States District Court
Northern District of California

Nor can Miller show that he received ineffective assistance of counsel due to counsel's failure to seek reconsideration of the trial court's ruling. Miller has not shown that counsel was deficient in failing to seek reconsideration or that the trial court would have changed its ruling. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance"). Even if counsel was deficient, Miller cannot demonstrate prejudice for the reasons set forth above. This claim is denied.

## PROSECUTORIAL MISCONDUCT

Miller argues that the prosecutor committed misconduct during cross-examination by asking argumentative questions and suggesting that Miller was a pedophile with an extensive history of inappropriate conduct.

### Legal Standard

Prosecutorial misconduct is cognizable in federal habeas corpus. The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *Id.*; *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005); *see also Deck v. Jenkins*, 814 F.3d 954, 978 (9th Cir. 2016) (recognizing that *Darden* is the clearly established federal law regarding a prosecutor's improper comments for AEDPA review purposes). A prosecutorial misconduct claim is decided "'on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995); *see Trillo v. Biter*, 769 F.3d 995, 1001 (9th Cir. 2014) ("Our aim is not to punish society for the misdeeds of the prosecutor; rather, our goal is to ensure that the petitioner received a fair trial.").

### Background

The California Court of Appeal discussed the relevant background for this claim:

> Defendant contends the prosecutor committed misconduct by repeatedly asking argumentative questions to him on cross-examination that suggested defendant "is a pedophile with a long history of lewd and lascivious touchings of young boys." . . .
>
> Here, on the second day of defendant's cross-examination, the prosecutor asked defendant if he gave Doe 4 back rubs and foot massages to "satisf[y] [his] lustful intent?" Defendant replied that, at the time, he had repressed his sexual feelings and did not act "with the intent to satisfy any lustful sexual desires." Before he could finish his answer, the prosecutor interjected, "Mr. Miller, that's not how you answered last Thursday; isn't that true?" Then, she asked defendant about whether he "had the opportunity to speak with your lawyer over the break." The trial court sustained defense counsel's objection. The prosecutor thereafter continued this same line of inquiry, asking, "[I]sn't it true that last Thursday when we talked about you giving back rubs to [Doe 4], you indicated that although you didn't get aroused, it satisfied your lustful intent for [Doe 4]?" Defendant again said that he was not thinking about

11

"sexual lustful feelings at that time." The prosecutor followed up with at least a dozen similar questions, each met with similar answers. In response to defendant's denial that he had previously testified that he "had touched and been in love with four children that [he] got lustful desires off of," the prosecutor stated, "Well, on a break I'm going to ask Madam Reporter to read back what you said on Thursday, so do you want to correct your testimony now?" Defense counsel interrupted with an objection that the question was argumentative and the court sustained the objection. The prosecutor then immediately asked almost the identical question. This time, the court twice overruled defense counsel's objections. Defendant reiterated that the prosecutor was misstating his testimony, and that he had not touched any children to fulfill his lustful desires. The prosecutor replied, "Okay. That's the testimony you'd like to stay with?" The court sustained defense counsel's objection that the question was argumentative. Later, the prosecutor asked, over objection, "Who's victim number 3, the person that you say that you had lustful feelings over and that you touched?" Defendant took issue with the word victim, but said that the only other boy he could think of was Doe 3. The prosecutor immediately followed up: "And that was [Doe 3] when you discussed that on Thursday he would come up and he would touch you and you would have lustful feelings for him, correct?" In response to defendant's statement that he didn't recall that, the prosecutor asked, "We talked about the fact that he would come up and he would be wearing his underwear or he would be half clothed and he would hug you, correct?" Again, defendant responded that he did not recall that testimony and the prosecutor responded, "Do you remember any of your testimony from Thursday?" Again, the court sustained defense counsel's objection that the question was argumentative. Finally, when the prosecutor asked if defendant had singled out the four boys he discussed at trial "because those are four children that you've touched and had lustful feelings for?" the trial court sustained defense counsel's objection finding that the question was argumentative and "asked and answered."

*Miller*, 2015 WL 5560192, at *5-6.

**Discussion**

The California Court of Appeal denied this claim, finding that any error admitting the statements was harmless. The court stated:

The prosecutor was entitled to cross-examine defendant on his claim that despite being an admitted pedophile, he had never engaged in sexual activity with any boys. Asking him whether he touched the boys to satisfy his sexual pleasure was therefore a proper subject for cross-examination. Contrary to defendant's argument, the questions were not asked solely "to advance a 'prior offense' inference that was not otherwise present in the evidence." The questions were asked to challenge his assertion that he had never engaged in sexual activity with the boys. The prosecutor was also entitled to question defendant regarding any inconsistencies in his testimony. To the extent that some of the prosecutor's questions were argumentative, the court sustained defense counsel's objections, negating the

12

> likelihood of prejudice. (*People v. Mayfield*, *supra*, 14 Cal. 4th at p. 755, *citing People v. Pinholster* (1992) 1 Cal. 4th 865, 943 [generally a party is not prejudiced by a question to which an objection has been sustained].)

*Miller*, 2015 WL 5560192, at *6.

Miller has not shown that the state court opinion denying this claim was objectively unreasonable. The state court found that the prosecutor was entitled to cross-examine Miller about these subjects in light of Miller's direct testimony and the prosecutor was permitted to explore inconsistencies in the testimony. A review of the record supports the state court's finding.

Miller testified on direct examination that he had been sexually and romantically attracted to young boys his entire life. RT at 1108. He also admitted sending and receiving videos of young boys and engaging in pornographic internet chats with other pedophiles. *Id*. at 1114-16, 1121-22. He denied receiving "sexual erotic pleasure" from touching the boys, but did say that he received a "romantic feeling" when doing so. *Id*. at 1218-19. It was permissible for the prosecutor to cross-examine Miller regarding these statements and his inconsistent answers.

Miller also argues that despite trial counsel objecting and the trial court sustaining many of the objections, the prosecutor continued to be argumentative and ask such questions. Yet, a review of the transcripts indicates that of the nearly 90 pages of cross-examination, there was not an excessive amount of instances where the prosecutor was argumentative or asking inappropriate questions. RT at 1130, 1142, 1175, 1185, 1218-21, 1232-34.

Even assuming that the prosecutor committed misconduct, Miller has failed to show that the conduct infected the trial with unfairness. The trial court sustained several of the objections and also instructed the jury that the attorneys' questions were not evidence. There was also overwhelming evidence of Miller's guilt. The state court opinion denying this claim was not objectively unreasonable.[3]

## INEFFECTIVE ASSISTANCE OF COUNSEL: EXCLUDED EVIDENCE

Miller contends that trial counsel was ineffective by allowing the prosecutor to question

---

[3] Miller also argues that trial counsel was ineffective if this claim was forfeited, yet the state court and this Court looked to the merits of the claim. Regardless, Miller did not receive ineffective assistance of counsel as he cannot show that counsel was deficient or that he was prejudiced.

him about his relationship with Doe 4 even though the trial court had excluded the evidence.

**Background**

The California Court of Appeal discussed the relevant background for this claim:

> Defendant contends his attorney provided ineffective assistance by failing to object to the prosecutor's questions and argument about evidence that the court had ruled inadmissible. "A prosecutor who improperly cross-examines a defendant in order to place inadmissible prejudicial evidence before the jury is guilty of misconduct. [Citations.] Improper questions that violate a previous ruling by the trial court are particularly inexcusable." (*People v. Johnson* (1978) 77 Cal. App. 3d 866, 873–874.) Again, however, we find no misconduct and thus, no support for defendant's ineffective assistance claim.
>
> The prosecutor moved in limine to admit evidence about events surrounding defendant's conviction in 1995 for possession of child pornography. The prosecution sought to admit evidence that defendant was arrested in 1994 after he sent pornographic images of Doe 4 in the mail. On the backs of the photos, he had written sexually explicit messages about acts he had performed on the boy, but when questioned by police, defendant "adamantly denied" that he touched Doe 4 inappropriately. Defendant opposed admission of this evidence.
>
> The trial court found that the events involving Doe 4 were remote and that they would lead "the jury to the conclusion, regardless of whether a live victim comes forward to testify to it, that the defendant molested the child." The court excluded the evidence under Evidence Code section 352, but indicated that its ruling was subject to reconsideration if defendant testified. The court explained, "[I]f he were to testify, then as I said, you'd have a different ball of wax. And I'm not asking you to tell me, [defense counsel], whether or not he's intending to testify. But there also may be part of the defense which lends itself through other witnesses to say that he has not molested children. Then that evidence again becomes relevant because you have admissions on the back of the photo that there are certain activities in which he engaged, if you believe those notes. And that would be perfectly appropriate for purposes of impeachment."
>
> After defendant took the stand, the prosecutor asked the court to revisit the issue. Despite some discussion, and for reasons that are not clear in the record, the prosecutor subsequently withdrew her request to introduce evidence of the facts surrounding the 1995 incident with Doe 4.
>
> As defendant notes, however, the prosecutor did cross-examine defendant about his relationship with 13–year–old Doe 4. The prosecutor elicited testimony from defendant that he became close to Doe 4's mother, started to spend nights at the mother's home, and eventually slept in the same room with Doe 4. He stroked the boy's hair and legs and gave him foot massages. He took photographs of

the boy. After the boy's mother divorced her husband, defendant continued his relationship with her son and eventually married the boy's mother. As discussed above, when asked if he touched Doe 4 to fulfill his "lustful desires," defendant acknowledged he touched the boy but claimed he did not get sexual pleasure from doing so.

In her closing argument, the prosecutor characterized the Doe 1 and Doe 4 events as "almost twin like" in that defendant had employed the same modus operandi in both instances. The prosecutor argued, "This is the exact reason for that instruction on propensity evidence. It's a mirror image. And the defendant took advantage of both of them, taking images of them sleeping so that he could gratify himself and his lustful desires." The prosecutor pointed the jurors to the instruction on uncharged sex offenses and argued that they could use defendant's uncharged offenses as evidence of the present one.

*Miller*, 2015 WL 5560192, at *6-7.

**Discussion**

The California Court of Appeal denied this claim.

Contrary to defendant's argument, the prosecution's questions and argument did not rely on the evidence excluded prior to trial. Although the prosecutor asked defendant if he took pictures of Doe 4, neither the content of the pictures nor defendant's sexually explicit statements were referenced. The prosecutor did not question defendant about the details surrounding his prior conviction. Rather, the prosecutor's questions were focused on exposing defendant's modus operandi and the similarity between his approach with Doe 4 and Doe 1. This evidence was not encompassed in the in limine ruling. Because the prosecutor did not violate the court's order, no objection was warranted.

*Miller*, 2015 WL 5560192, at *7.

Miller has failed to demonstrate that the California Court of Appeal's decision was unreasonable. A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *See Cullen v. Pinholster*, 563 U.S. 170, 202 (2011); *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (same). The general rule of *Strickland*, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

While the trial court initially excluded the evidence regarding Doe 4, the issue resurfaced after Miller's testimony. The trial court and attorneys discussed what evidence would be

15

admissible in light of Miller's direct testimony. RT at 1153-68. The evidence involving Doe 4 was discussed at length. RT at 1158-68. The trial court found that in light of Miller's testimony, information regarding the prior incident, such as the police report, could be admitted. RT at 1165. The prosecutor chose not to admit evidence regarding the prior incident, RT at 1168, but she did cross-examine Miller regarding the incident.

As noted by the California Court of Appeal, the prosecutor did not rely on the evidence that had initially been excluded and the details of the conviction. Rather, her questions involved Miller's modus operandi and the similarity between his approach with Doe 4 and Doe 1. This evidence was not encompassed in the in limine ruling. The state court's finding was not objectively unreasonable. Trial counsel was not deficient for failing to object to the questions that were not at issue with respect to the original in limine ruling. Even if trial counsel was deficient, Miller cannot demonstrate prejudice. The prosecutor's questions regarding Doe 4 and the prosecutor's closing argument about Doe 4 were isolated with respect to all of the other evidence implicating Miller. Due to the extensive evidence against Miller, he cannot show that there was a reasonable probability that had counsel objected to the prosecutor's questions the result of the proceeding would have been different. This claim is denied.

### INEFFECTIVE ASSISTANCE OF COUNSEL: MISSTATEMENT OF LAW

Miller argues that trial counsel was ineffective by failing to object when the prosecutor misstated the law regarding California Penal Code section 288 during cross-examination and closing argument.

### Background

The California Court of Appeal discussed the relevant background for this claim:

> Defendant contends the prosecutor committed misconduct by incorrectly defining section 288 before the jury. It is misconduct for the prosecutor to misstate the law during argument (*People v. Huggins* (2006) 38 Cal. 4th 175, 253, fn. 21; *People v. Otero* (2012) 210 Cal.App. 4th 865, 870), especially when the misstatement of law attempts "to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements" (People v. Marshall (1996) 13 Cal. 4th 799, 831). "'When a claim of misconduct is based on the prosecutor's comments before the jury, "'the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained–of remarks in an

objectionable fashion.""" (*People v. Gonzales* (2012) 54 Cal. 4th 1234, 1275.)

Section 288, subdivision (a), provides that "any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony. . . ." It is settled that the touching itself need not take any particular form provided that it is done with sexual intent. (*People v. Shockley* (2013) 58 Cal. 4th 400, 404.) "'Any touching of a child under the age of 14 violates this section, even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the intent to arouse or gratify the sexual desires of either the perpetrator or the victim.'" (People v. Lopez (1998) 19 Cal. 4th 282, 289.) Defendant contends the following questions and argument by the prosecutor improperly excluded the element of sexual intent from the definition of section 288.

On cross-examination defendant was asked whether he had ever touched a minor in a manner which he found sexually arousing and defendant indicated that he refrained from conduct which was overtly sexual. He explained, "I have done everything in my lifetime to come very close to not going over the border. I've done everything in my ability to not have a sexual experience with a child, oral sex, masturbation, touching of the penis, anything like that. I have never done that in my lifetime." Then the prosecutor asked, "I'm going to take you back to the beginning of your testimony. *You said that when you touched children at [the home of Doe 3's father], whether it be their arms, their legs or anywhere else, you would have lustful feelings. That is a violation of Penal Code Section 288a.* [¶] So I'm going to ask you again, how many children have you touched anywhere on their body that you did to gain gratification, lustfully or to be aroused or in some way gain some sort of sexual pleasure? You do not have to get an erection, you do not have to ejaculate, but just to gratify yourself lustfully." Defendant responded, "It's an impossible question to give you a straight number to, but I will say this: I have had a close friendship with four different boys in my adult lifetime."

*Miller*, 2015 WL 5560192, at *4.

**Discussion**

The California Court of Appeal denied this claim.

Contrary to defendant's argument, the prosecutor's cross-examination quoted above, including the italicized portion emphasized by defendant, did not suggest that merely touching a minor without sexual intent constituted lewd and lascivious conduct. Rather, the prosecutor's questions were intended to elicit acknowledgement that defendant had touched minors in a manner that he may not have considered overtly "sexual" but nonetheless were for the purpose of his own sexual gratification. There was no fault in the prosecutor's questions.

17

Likewise, there was no misconduct in the prosecutor's closing argument. The prosecutor began her closing argument by telling the jury, "Here are the elements I actually have to prove: I have to prove that the defendant willfully touched any part of a child's body either on the bare skin or through the clothing. . . . [¶] . . . [¶] . . . And I have to prove to you that the defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child." The prosecutor continued, "Take a look at element two: With the intent of arousing, appealing to, or gratifying the lust. . . . Touching does not need to cause the defendant to be physically aroused in any way. Touching does not have to cause the victim to be physically aroused in any way. If you gratify the lust of yourself or the child, it's enough." The prosecutor argued, "Even the defendant's own testimony is that he was touching this child and he continued to touch the child in the middle of the night and he received sexual gratification. The defendant's own testimony is [a] violation[ ] of Penal Code section 288(a)." The prosecutor summarized, "Very quickly. 'I look but I don't touch.' . . . The problem is that I've read to you his own testimony . . . that he does in fact touch and he does have the intent required for 288(a). [¶] There it is again. Gratifying the lust, passions, and sexual desires. . . . [I]t's really the mental intent of gratifying the lust that we're looking at."

In her closing argument, defense counsel characterized defendant's touching of the boys as innocent hugging and kissing. Counsel stated, "[W]hat is amazing is the prosecution is now arguing that every time he touched [Doe I] that it was in a sexual way, that that itself is a 288(a). How is that possible? [¶] Ask yourself this: If you're attracted to a female and you hug that female, does that mean you committed a lewd act on the female? [¶] Now think about this: —What if someone asked you later—you're attracted to women— 'Did you enjoy that hug?' 'Sure.' You might even say, 'Yes.' [¶] But when you're hugging that person, that innocent act, even though you might be attracted to that person, does not rise to the level of a 288(a)."

In rebuttal, the prosecutor responded, "Defendant tells you that I'm trying to stand here and say that every act of which he touches a particular individual, particular child, every time he touches [Doe I], it's for a lewd or lascivious behavior. [¶] Well, I've got news for you. I disagree with the defense attorney. When I'm together with somebody that I love, the person who is special in my life, whoever that is, whoever I care for in that moment, and I walk up to them and I hug them, there's lustful gratification that comes from that. And I have no problem admitting that. That's not unusual. That's how we live our day-to-day lives with whoever we choose to spend it with. [¶] The problem is the defendant had a criminal lustful desire."

Contrary to defendant's argument, the prosecutor did not omit the element of intent from her argument. Whether or not there was any overstatement in the prosecutor's assertion that every touching of a person special in one's life is lustful, the thrust of her argument correctly explained that seemingly innocent touching, such as a hug, violates section 288 if done with criminal intent. Defendant admitted "romantic" intent and incidental sexual gratification from

touching. The prosecutor asked the jury to make the reasonable inference that defendant touched and hugged Doe 1 to obtain that sexual gratification.

*Miller*, 2015 WL 5560192, at *4-5.

Miller has failed to demonstrate that the California Court of Appeal's decision was unreasonable in light of the high standard for ineffective assistance of counsel claims under § 2254. The state court found that during cross-examination, the prosecutor was not stating that simply touching a child would constitute a crime. The prosecutor was responding to Miller's statements in direct and cross-examination. With respect to whether Miller was sexually aroused when he slept with Doe 1, Miller responded that he "received a warm wonderful, pleasurable feeling of sleeping next to a boy that I was attracted to." RT at 1139. Miller also stated that while he incidentally touched Doe 1 with his body, he never put his hands on Doe 1. RT at 1143. Based on Miller's answers, the prosecutor did not misstate the law in asking the questions regarding whether Miller had ever touched children in a way that may not be considered sexual but were for his own sexual gratification. Counsel was not ineffective for failing to object.

Nor did the prosecutor misstate the law in her closing argument, and counsel was not ineffective for failing to object. The California Court of Appeal found that the prosecutor did not misstate the law when explaining that Miller could have violated section 288 if what appeared to be innocent touching was done with criminal intent. Miller admitted romantic intent and sexual gratification from touching. The state court held that the prosecutor asked the jury to make a reasonable inference from these statements that Miller had violated section 288. When considering the prosecutor's closing argument in its entirety, it is clear that she described every element of section 288. *See Donnelly v. Christoforo*, 416 U.S. 637, 647 (1974) ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that the jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations"). The state court decision finding that the prosecutor did not misstate the law was not unreasonable.

Even if the prosecutor did misstate the law and trial counsel was deficient for failing to object, Miller cannot demonstrate prejudice. A misstatement of the law by an attorney during

closing argument is not prejudicial when the jury is correctly instructed on the law. *See Donnelly*, 416 U.S. at 646-47 ("Isolated passages of a prosecutor's argument, billed in advance to the jury as a matter of opinion not of evidence, do not reach the same proportions [as consistent and repeated misrepresentations of a dramatic exhibit]"). In this case, the jury was properly instructed on the elements of section 288. CT at 368-69; RT at 1408. The jury was also instructed to follow the law as explained by the court and not the attorneys' comments on the law. RT at 1317. Moreover, there was an abundance of evidence implicating Miller. The denial of this claim was not objectively unreasonable in light of the high standard for ineffective assistance of counsel claims.

### RESTITUTION

Miller contends that the trial court erred in issuing a restitution fine of one million dollars to Doe 1 under California Penal Code section 1202.4(f)(3)(F) in that it violated *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

**Legal Standard**

A challenge to a restitution fine does not allege that the petitioner is wrongfully "in custody" and therefore does not state a cognizable habeas claim. *Bailey v. Hill*, 599 F.3d 976, 981-82 (9th Cir. 2010) ("§ 2254(a) does not confer jurisdiction over a state prisoner's in-custody challenge to a restitution order imposed as part of a criminal sentence."); *United States v. Ross*, 801 F.3d 374, 380 (3d Cir. 2015) ("[F]ines, restitution orders, and other monetary penalties are insufficient to meet the 'in custody' requirement [of federal habeas statutes].") (citing cases, including *Bailey*). The Ninth Circuit has also held that the *Apprendi* rule does not apply to restitution for purposes of federal sentencing. *United States v. Alvarez*, 835 F.3d 1180, 1185 (9th Cir. 2016).

**Discussion**

The California Court of Appeal held that pursuant to state law, there was no error in the trial court's restitution order. Miller cannot challenge in this federal habeas petition the state court's ruling on state law. *See Estelle*, 502 U.S. at 67-68. Miller's challenge to the restitution order as a violation of federal law fails to state a habeas claim as set forth above. This claim is

20

denied.

## CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Cases, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has made no showing warranting a certificate.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**. Petitioner's request for an evidentiary hearing is **DENIED** because he has not shown he is entitled to an evidentiary hearing in connection to any of the claims in the petition. *See Cullen*, 563 U.S. at 183 (when state court record precludes habeas relief under § 2254(d), district court not required to hold evidentiary hearing). A certificate of appealability is **DENIED**. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

**IT IS SO ORDERED.**

Dated: June 21, 2018

_____
JAMES DONATO
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER J. MILLER,

               Plaintiff,

     v.

JOEL MARTINEZ,

               Defendant.

Case No. 16-cv-06806-JD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 21, 2018, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Christopher J. Miller
T75520
Valley State Prison
P.O. Box 96
Chowchilla, CA 93610

Dated: June 21, 2018

Susan Y. Soong
Clerk, United States District Court

By:_____
LISA R. CLARK, Deputy Clerk to the
Honorable JAMES DONATO